UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| APOLINAR ORTIZ-ISLAS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:12-cr-00125-JAW-3 |
| | ) | 1:17-cv-00386-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

### RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

In this action, Petitioner Apolinar Ortiz-Islas moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence.[1] (Amended Motion, ECF No. 334.) Following a jury trial, Petitioner was convicted of conspiracy to distribute and to possess with intent to distribute five or more kilograms of cocaine; the Court sentenced Petitioner to 170 months in prison. (Superseding Indictment, ECF No. 80 at 1; Jury Verdict Form, ECF No. 218; Judgment, ECF No. 284 at 1-2.) The First Circuit affirmed the conviction and the sentence. *United States v. Ortiz-Islas*, 829 F.3d 19, 23 (1st Cir. 2016).

Petitioner claims ineffective assistance of counsel based on counsel's failure to negotiate a plea agreement, failure to call certain witnesses at trial and sentencing, and failure to contest a firearms enhancement. (Amended Motion at 4-5, 13.)

---

[1] Petitioner Apolinar Ortiz-Islas is also known as Polo. (Docket Record.) As explained below, in the Court's inquiry regarding plea offers, Petitioner informed the Court his name is Apolinar Islas-Ortiz. (Trial Tr. I, ECF No. 308 at 5.)

Following a review of Petitioner's amended motion, the Government's request for dismissal, and the record, I recommend the Court grant the Government's request, and dismiss Petitioner's amended motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The jury found Petitioner guilty of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine; the conspiracy period commenced no later than January 1, 2011, and ended no earlier than June 28, 2012. (Superseding Indictment at 1; Jury Verdict Form.)

The First Circuit summarized the sentencing findings:

> At sentencing, the district court found Ortiz-Islas accountable for almost 34 kilograms of cocaine, which (at the time) gave him a base offense level of 34 under U.S. Sentencing Guidelines Manual § 2D1.1(c)(3) (U.S. Sentencing Comm'n 2013). The court applied a two-level increase in light of evidence that Ortiz-Islas possessed a gun at some of the drug deals, *id.* § 2D1.1(b)(1), but varied back downward by two levels at the parties' urging in recognition of impending Guidelines amendments providing two-level reductions in drug-quantity offense levels. An offense level of 34 and a criminal history category of I yielded a Guidelines sentencing range of 151 to 188 months. *Id.* (sentencing table). The Government recommended a sentence at the top of this range. But taking account of the other conspirators' sentences ([Chad] Hallett received 48 months, [Mathieu] LeBlanc got 104, and [Victor] Charles and [Robert] Rossignol 120 each), the court sentenced Ortiz-Islas within the Guidelines range to 170 months' imprisonment.

829 F.3d at 24. The judgment also provides that following the prison term, Petitioner must serve a term of three years of supervised release. (Judgment at 3.)

On appeal, the First Circuit addressed two trial issues and two sentencing issues. Regarding the trial, the Court concluded that there was no impermissible variance between the indictment and the proof at trial regarding the existence of "a single conspiracy to

distribute and to possess with intent to distribute cocaine in Maine and elsewhere," 829 F.3d at 26; and that evidence of a September 2012 "sting 'transaction'" that occurred after the August 2012 indictment was admissible, *id.* at 27. As to the sentence, the First Circuit concluded it was "improbable" that this Court impermissibly used a statutory maximum sentence of life based on 21 U.S.C. § 841(b)(1)(A), and a statutory minimum of zero based on section 841(b)(1)(C), but in any event Petitioner was not harmed, because the sentence imposed was below the statutory maximum set forth in either section. 829 F.3d at 27-28. The Court also concluded the sentence was neither procedurally nor substantively unreasonable. *Id.* at 28-29.

Petitioner asserts that he signed and placed his section 2255 motion in the prison mailing system on September 26, 2017. (Motion, ECF No. 324 at 12.) In December 2017, Petitioner requested leave to file an amended motion. (Motion, ECF No. 331 at 1.) In response to the motion to amend, the Government argued the Court should only consider arguments that relate back to the initial section 2255 motion, pursuant to Fed. R. Civ. P. 15(c), *i.e.*, that the Court not consider new claims. (Response, ECF No. 332 at 2.) The Court granted the motion to amend, and in January 2018, Petitioner filed an amended motion. (Order, ECF No. 333; Amended Motion, ECF No. 334.) The Government filed a response to the merits of Petitioner's amended motion. (Response, ECF No. 338.)

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the

United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28.

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

4

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Id.* at 697.

If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The Court can reasonably require a petitioner to supply the Court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (concluding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

5

### B. Claims and Analysis

#### 1. Claim of failure to negotiate and communicate a plea agreement

Although in the memorandum in support of his amended motion, Petitioner alleges counsel failed to negotiate a plea agreement, and that counsel failed to communicate the Government's plea offer, in his reply Petitioner alleges "counsel failed to timely and fully disclose" the plea offer. (Memorandum in Support, ECF No. 334-1 at 8-9; Reply, ECF No. 341 at 4.) In the attachment to Petitioner's reply, he alleges he learned about the offer from the Court on the first day of trial, rather than from counsel before the trial. (Attachment to Reply, ECF No. 341-1.)

On the first day of the trial (October 15, 2013), before the trial started, in accordance with the Supreme Court's decision in *Missouri v. Frye*, 566 U.S. 134 (2012), the Court asked the parties whether they had documented any formal settlement offers. As the Supreme Court explained, the inquiry is designed "to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences." *Id*. at 146. The record reflects the following *Frye* inquiry:

> THE COURT: Good morning. Mr. Casey, in accordance with United States -- or Missouri v. Frye, have you documented all formal plea offers in accordance with the case?
>
> MR. CASEY: Your Honor, there has been one plea offer under letter dated May 9th, 2013, which was not accepted by the defendant.
>
> THE COURT: [Counsel], is that correct?
>
> [COUNSEL]: Yes, Your Honor, that is correct.

> THE COURT: Thank you. Mr. Ortiz-Islas, would you please stand. What is your name?
>
> THE DEFENDANT: Apolinar Islas-Ortiz.
>
> THE COURT: Mr. Ortiz-Islas, you have just heard the prosecutor state that one plea offer was made to you by letter dated May 9, 2013, and that that plea offer was not accepted; is that correct?
>
> THE DEFENDANT: It's correct.
>
> THE COURT: And you have received no other plea offers through your lawyer in this case; is that correct?
>
> DEFENDANT: That's correct.
>
> THE COURT: Thank you. You may be seated.

(Trial Tr. I, ECF No. 308 at 4-5.)

While the inquiry did not reveal exactly when Petitioner received the May 9, 2013, letter, Petitioner's response clearly reflects he received the letter sometime prior to his court appearance. Notably, Petitioner did not express surprise when the prosecutor informed the Court that a plea offer had been communicated by letter dated May 9, 2013, did not tell the Court that he learned of the offer for the first time from the Court,[2] and did not express any other concerns about the timing of his receipt of the plea offer. Petitioner's statements to the Court, including that the prosecutor's statements to the Court regarding the plea offer were accurate, are presumed true unless he provides "valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt*, 731 F.2d 75,

---

[2] In an "Unsworn Affidavit of Facts," attached to Petitioner's Reply (ECF No. 341-1), Defendant wrote, "upon instruction given by my defense counsel I answered in agreement to the courts (sic) inquiring regarding the plea agreement disclosure even though such disclosure was made to me by the district court and not by my counsel."

7

80 (1st Cir. 1984) (concluding the petitioner "fail[ed] to reasonably substantiate his ineffective assistance of counsel claim with any material issues of fact," and he therefore had not "'overcome the presumption of regularity which the record . . . imports'") (quoting *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

Petitioner has not provided any information or persuasive argument that would support the conclusion that he learned of the plea offer for the first time on the first day of trial. Indeed, based on Petitioner's responses in the *Frye* inquiry, it is reasonable to infer, in the absence of any evidence to corroborate Petitioner's allegations to the contrary, that counsel communicated the plea offer to Petitioner sometime after the May 9, 2013, date on the plea offer, but before the first day of the trial. *See United States v. Kennedy*, 881 F.3d 14, 22 (1st Cir. 2018) (noting "courts may draw inferences from facts presented in a plea colloquy"). Petitioner, therefore, has not overcome the presumption that his statement to the Court that he was aware of and had rejected the May 9, 2013, written plea offer was true. Petitioner's unsubstantiated claim of ineffective assistance for failure to communicate the plea offer thus fails.[3] *Butt*, 731 F.2d at 80.

### 2. Claim of failure to call witnesses at trial and sentencing

Petitioner alleges counsel provided ineffective assistance at trial and sentencing because counsel failed to call as witnesses Jose Duarte, Camerino Duarte-Prieto, and two other men who were arrested with Petitioner during the sting operation in September 2012.

---

[3] The Court's inquiry pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012), also presents a significant impediment to Petitioner's ability to establish prejudice. That is, Petitioner's acknowledgement of the May 9, 2013, plea offer and his rejection of the offer belie any suggestion that Petitioner would have decided to forego trial and plead guilty in accordance with the plea offer.

8

(Amended Motion at 4; Memorandum in Support at 6, 10-12.)[4] On appeal, the First Circuit concluded that evidence of the September 2012 sting operation was not "'intrinsic' to the charged conspiracy," because it occurred after the indictment issued in August 2012, but the Court nonetheless determined that the sting operation provided evidence of the conspiracy course of conduct because it "was closely linked in time to the alleged conspiracy and proved the identities and relationships of the conspirators." 829 F.3d at 27.

Petitioner alleges the witnesses would have provided a defense at trial because they would have testified "that the cocaine seized belonged to them and not to the Petitioner," and that Petitioner "was actually innocent and had nothing to do with the supply of cocaine." (Memorandum in Support at 6.) Petitioner also alleges in his reply that "during an interview with the DEA Camerino Duarte[-Prieto] did unequivocally declare that the only involvement of the Petitioner in the events leading to their arrest was the actual intent to purchase 500 grams . . . of cocaine."[5] (Reply at 3.) Petitioner contends he has demonstrated prejudice, *i.e.*, that there is a reasonable probability that if the witnesses had testified, the jury would not have returned a guilty verdict. *Strickland*, 466 U.S. at 694. (Amended Motion at 4.)

---

[4] At trial, a sheriff's deputy from Texas, assigned to a federal Homeland Security and Drug Enforcement Agency task force, testified that after the arrest on September 18, 2012, one of his assigned tasks was to file state charges against Jose Duarte, Camerino Prieto, and another person. (Trial Tr. III, ECF No. 310 at 80-82.)

[5] In his reply, Petitioner concedes a drug quantity of conviction of up to (but less than) 15 kilograms, based on the trial testimony of Victor Charles, Chad Hallett, and Kyle MacDonnell. (Reply, ECF No. 341 at 5-7.)

First, contrary to Petitioner's argument, the proposed testimony of Camerino Duarte-Prieto that Petitioner was involved in a significant drug transaction would not have exonerated Petitioner, particularly given the other evidence of Petitioner's involvement in the conspiracy. In addition, Petitioner has offered no persuasive evidence that the proposed testimony that the seized cocaine did not belong to Petitioner would have effectively refuted the evidence of Petitioner's involvement in the conspiracy with the named co-conspirators. In other words, Petitioner's conspiracy conviction is not dependent on whether the seized cocaine belonged to Petitioner. In sum, Petitioner's contention that trial testimony from Jose Duarte or Camerino Duarte-Prieto would have provided a defense to all of the charges is inconsistent with his reply allegations, is overly vague, and lacks record support. *See David*, 134 F.3d at 478. Therefore, his related claim−that counsel's failure to attempt to obtain the testimony constituted deficient performance−also fails. *See Strickland*, 466 U.S. at 688, 694; *Tse*, 290 F.3d at 465.

Petitioner also fails to demonstrate prejudice, because his section 2255 allegations do not undermine the "overwhelming evidence" on which the First Circuit concluded the conviction was based. 829 F.3d at 27. The Court noted particularly that co-defendant Victor Charles testified he made multiple trips to Maine to transport cocaine he had purchased from Petitioner:

> [Charles] made about six trips to Maine transporting cocaine purchased from Ortiz-Islas. The first was said to involve three kilograms, and the quantity on each subsequent trip was at least five.

829 F.3d at 24.[6] Because the evidence was sufficient to convict Petitioner of a conspiracy that involved at least five kilograms of cocaine, notwithstanding testimony Petitioner alleges counsel might have obtained from Jose Duarte, Camerino Duarte-Prieto, or others, Petitioner has failed to demonstrate either deficient performance or prejudice based on counsel's failure to call the witnesses at trial. *See Strickland*, 466 U.S. at 688, 694; *Rivera-Rivera v. United States*, 827 F.3d 184, 186-87 (1st Cir. 2016) (denying section 2255 relief because the Court had determined on appeal that the evidence of interstate commerce was sufficient, and therefore counsel's failure to file a likely unsuccessful motion to acquit was not deficient, and the petitioner was not prejudiced).

Petitioner also asserts ineffective assistance at sentencing regarding the drug quantity. (Memorandum in Support at 10-12; Reply at 7.) The Court found the base offense level was 34, based on a drug quantity of 33.94 kilograms of cocaine.[7]

---

[6] The Government noted in its sentencing memorandum that Victor Charles provided drug quantity estimates higher than the 15 to 18 kilograms offered by Mathieu LeBlanc of the amount of cocaine LeBlanc obtained from Petitioner. (Sentencing Memorandum, ECF No. 265 at 6-7 & n.1.) The Government added: "This 15-18 kilogram estimate is extremely conservative when one considers that Chad Hallett reported that he was responsible for transporting 37 kilograms of cocaine from Houston to Canada for LeBlanc during the six trips that he made to Texas." (*Id.* at 7 n.1.) The Court's drug quantity sentencing finding of 33.94 kilograms, and, hence, its base offense level of 34, was based on (1) LeBlanc's low-end estimate of 15 kilograms from prior trips; (2) the 9.94 kilograms found in the vehicle when Petitioner was arrested in September 2012; and (3) the 9 kilograms that would have been transacted had LeBlanc not been arrested. (Sentencing Tr. at 11.)

[7] The 2013 version of the sentencing guidelines was in effect at Petitioner's August 2014 sentencing. At that time, USSG § 2D1.1(c)(3) provided that a base offense level of 34 applied to a drug quantity of "[a]t least 15 KG but less than 50 KG of Cocaine." Section 2D1.1(c)(4) of the 2013 version provided that a base offense level of 32 applied to a drug quantity of "[a]t least 5 KG but less than 15 KG of Cocaine."

Section 2D1.1(c) was amended, effective November 1, 2014. "[T]he amendment reduces by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties, resulting in corresponding guideline ranges that include the mandatory minimum penalties." USSG Supp. to App. C, Amend. 782 (Reason for Amendment).

(Sentencing Tr., ECF No. 311 at 11, 45.) *Ortiz-Islas*, 829 F.3d at 24. Petitioner evidently alleges counsel should have argued the drug quantity was below 15 kilograms, which corresponded to a base offense level of 32 under the guidelines in effect at Petitioner's sentencing. (Reply at 7.)

Petitioner's claim is premised on his unsupported allegation that counsel argued for a base offense level of 34; in fact, in the written submissions on which counsel relied at the sentencing hearing (Sentencing Tr. at 6), counsel argued for a base offense level of 32. The revised presentence investigation report incorporated Petitioner's objection to the drug quantity proposed in the report; Petitioner argued the attributable drug quantity was 11.94 kilograms, and the base offense level was 32. (Report, Objection #2.) Petitioner's sentencing memorandum asserted a drug quantity of just under 15 kilograms and a corresponding base offense level of 32. (Sentencing Memorandum, ECF No. 274 at 18.)

Furthermore, at the sentencing hearing, Petitioner told the Court, in response to the Court's inquiry, that he had read and understood the revised presentence investigation report, and that he had had enough time to discuss it with counsel; Petitioner told the Court that, aside from a correction to Petitioner's educational background, the content of the revised presentence investigation report was correct. (Sentencing Tr. at 4-5.) The Court

---

In the statement of reasons entered with the judgment, the Court noted it imposed a variant sentence in recognition of the then-anticipated amendment: "The Court imposed [a] variant sentence equivalent to two (2) levels [p]ursuant to the two (2) level reduction proposed by the USSC in the new amendment cycle for all drug cases. The government did not oppose the request and the defendant waived his rights under 18 U.S.C. § 3582(c)." (Statement of Reasons, ECF No. 285 at 3.)

asked: "Other than [the correction to a reference to Petitioner's educational background], are there any other corrections you need to make in the report?" (*Id.* at 5.) Petitioner responded: "No, I think that my attorney made all the corrections we needed to make." (*Id.*)

In summary, Petitioner has failed to demonstrate either deficient performance or prejudice regarding counsel's performance at sentencing regarding the drug quantity. *See Strickland*, 466 U.S. at 688, 694.

### 3. Claim of failure to contest a firearms enhancement at sentencing

Petitioner alleges counsel's performance was deficient, and Petitioner was prejudiced, because counsel failed to argue that a firearms enhancement did not apply. (Amended Motion at 13; Memorandum in Support at 12-14, 16.) Petitioner contends the trial testimony established that he did not possess or own a firearm, and that the firearms involved in the offense were not linked to him. (Memorandum in Support at 13-14.)

At sentencing, the Court found that it was "virtually inconceivable that the defendant could not have reasonably or would not have reasonably foreseen" that someone involved in the conspiracy was armed, given that there was "an exchange of controlled substances for a large amount of cash." (Sentencing Tr. at 18.) The Court noted the firearms finding was pursuant to the standard set forth in *United States v. Quiñones-Medina*, 553 F.3d 19, 23 (1st Cir. 2009) ("To warrant the enhancement the presence of the weapon must have been known to, or reasonably foreseeable to, the defendant."), and *United States v. Bianco*, 922 F.2d 910, 912 (1st Cir. 1991) ("Absent evidence of exceptional circumstances, we think it fairly inferable that a

codefendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash."). *See also United States v. Miranda-Martinez*, 790 F.3d 270, 276 (1st Cir. 2015) ("To warrant the enhancement, the defendant does not need to have possessed the weapon [himself] or even to have known about it, it just must be reasonably foreseeable that a co-conspirator would possess a weapon in furtherance of the criminal activity.") (quotation marks omitted).

Petitioner's ineffective assistance claim fails because the underlying contention−that there must be evidence that Petitioner personally possessed a firearm to support a firearms enhancement−lacks merit. *See Miranda-Martinez*, 790 F.3d at 276; *Quiñones-Medina*, 553 F.3d at 23; *Tse*, 290 F.3d at 465; *Bianco*, 922 F.2d at 912.

In addition, although a decision to omit a meritless argument would not constitute deficient performance, *see Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990), counsel did in fact include Petitioner's argument, among others, in opposition to the firearms enhancement. In Petitioner's sentencing memorandum, counsel asserts "[t]here was no reliable evidence that Mr. Islas ever carried or possessed a dangerous weapon in this case." (Sentencing Memorandum at 14.) Counsel also argued the firearms enhancement did not apply because a co-defendant testified "that Mr. Islas was not the type to be using firearms," and because "the firearms at issue were there to be used *against* [Petitioner]." (*Id.*) Counsel requested that if the Court determined the enhancement applied, the Court grant a two-level variance "due to the testimony regarding the peacefulness of Mr. Islas."

14

(*Id.*)  The fact that counsel's arguments were unsuccessful is not in itself a basis for a successful ineffective assistance claim.  *See Strickland*, 466 U.S. at 699.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  In addition, I recommend that the Court deny Petitioner's amended motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 27th day of July, 2018.